LOMANCO, INC., Plaintiff,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Dart Orient Services, Inc., and Carland Shipping, Ltd., Defendants.

No. LR-C-82-509.

United States District Court,
E.D. Arkansas, W.D.

July 1, 1983.

James Moody and Brad Walker, Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiff.

Michael Smith, Friday, Eldredge & Clark, Little Rock, Ark., for defendant Mo. Pac. R.R.

Beverly Rowlett, Laser, Sharp, Haley, Young & Huckabay, Little Rock, Ark., for defendants Dart Orient Serv. & Carland Shipping.

## MEMORANDUM OPINION

ROY, District Judge.

The instant case involves a claim for damages by Lomanco, Inc., of Jacksonville, Arkansas, against the Missouri Pacific Railroad Company ("MoPac"), Dart Orient Services, Inc. ("Dart"), and Carland Shipping, Ltd. ("Carland"). As the pleadings reflect, on March 23, 1981, Lomanco ordered 360 ceiling fans from a manufacturing company located in Hong Kong (Fan Tat Manufacturing Company, which is not a party to this suit). The fans were loaded at Hong Kong upon the S.S. Oriental Exporter, a container ship owned by Carland which transported them to Seattle, Washington. From there the fans were taken to Kansas City, Missouri, by the Union Pacific Railroad Company, after which they were switched to MoPac cars and brought to their final destination in Jacksonville, Arkansas. Soon after its receipt of the fans, Lomanco discovered that most of the fans had been damaged. Notice of the damage was given to all defendants; thereafter the fans were sold for their salvage value. Lomanco then brought the instant action for the difference, namely, $8,314.19.

In addition to the primary complaint, defendants Dart and Carland have filed a cross-claim against their co-defendant MoPac for indemnity in the event that judgment should be entered against them (Dart and Carland). MoPac, in turn, has filed a counterclaim seeking indemnity against Dart and Carland, said counterclaim being contingent upon the entry of a judgment against MoPac.

Dart and Carland have moved to dismiss all claims against them alleging (1) that this Court lacks *in personam* jurisdiction over them; (2) that the statute of limitations has expired; and (3) that no claim for relief is stated against Dart. Due to the Court's finding that it lacks personal jurisdiction over these two defendants, discussion of the latter two issues is rendered unnecessary, and this opinion is thus limited to an analysis of the jurisdictional issue.

The complaint herein sets forth as its jurisdictional bases 49 U.S.C. § 11707 and 46 U.S.C. § 1300 *et seq.* The former statute deals with the liability of common carriers under receipts and bills of lading. The latter group of statutes comprises the Carriage of Goods by Sea Act of 1936 ("COGSA"). Although none of the statutes set forth in the complaint vests original jurisdiction in the United States District Courts, the Court finds that it does in fact have subject matter jurisdiction over the instant cause pursuant to 28 U.S.C. § 1337, which provides that,

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies"[1].

■ Pursuant to this statute, the federal district courts have original jurisdiction of

---

1. Despite the absence of any reference to 28 U.S.C. § 1337 in the complaint, "Jurisdiction under Section 1337 may be properly invoked even though plaintiff did not plead that provision in the complaint." *Lumberman's Underwriting Alliance v. Hills,* 413 F.Supp. 1193 (W.D.Mo.1976).

848

any civil action under any Congressional act which regulates commerce, where the remedy sought is inferable from the act or hinges upon an interpretation of it. *Ashley, Drew & Northern Railway Co. v. United Transportation Union and Its Affiliated Local No. 1121,* 625 F.2d 1357 (8th Cir.1980). COGSA has been held to undoubtedly be such an "act of Congress regulating commerce" within the meaning of 28 U.S.C. § 1337. *Crispin Co. v. Lykes Bros. Steamship Co.,* 134 F.Supp. 704 (S.D.Tex.1955). So, likewise is 49 U.S.C. § 11707 such an act of Congress regulating commerce.

■ Thus the Court holds that it has subject matter jurisdiction over the plaintiff's claim against defendants Dart and Carland pursuant to 28 U.S.C. § 1337 via 46 U.S.C. § 1300 *et seq.* (COGSA). The Court finds, however, that personal jurisdiction over these defendants has not been shown to exist. It appears to be undisputed in the pleadings that Dart is a citizen of New York and Carland is a British corporation located in Hong Kong. Also apparently undisputed is the fact that Carland is the owner of the S.S. Oriental Exporter and that Dart performs some undefined steamship agency functions for the S.S. Oriental Exporter. However, affidavits show that neither of these parties have had any connection with the State of Arkansas and that neither party does business in Arkansas. Neither Dart nor Carland is a party to the bill of lading under which the fans were shipped to Lomanco. Neither party, according to the pleadings, has entered into any contract with the plaintiff.

Under Ark.Stat.Ann. §§ 27–2501 *et seq.* (the Arkansas enactment of the Uniform Interstate and International Procedure Act), personal jurisdiction may be had based upon an "enduring relationship" with this state or upon certain categories of conduct which are enumerated in § 27–2502(C). The Court finds that none of the relationships or types of conduct listed in the above statute exist in this case. Moreover, this Court's attempt to exercise *in personam* jurisdiction over Dart and Carland would

violate their rights to due process of law protected by the Fourteenth Amendment.

Beginning with *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the former concepts of requiring a defendant's "presence" and "consent" were rejected in favor of the requisite of "certain minimum contacts" with the forum state such that maintenance of a suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. The Supreme Court noted that the demands of due process are met "by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." *Id.* at 317, 66 S.Ct. at 158. This trend was continued in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in which the Court found that only one contact, having a substantial connection with the state, was sufficient for due process purposes. Later, however, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court also noted that not all restrictions to the exercise of *in personam* jurisdiction over foreign corporations had been removed. The *Hanson* opinion reiterated that a minimal burden to establish jurisdiction is that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1239. See, also, *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hutson v. Fehr Bros., Inc.,* 584 F.2d 833 (8th Cir.1978); and *Amstar Corp. v. S.S. Alexandros,* 457 F.Supp. 717 (S.D.N.Y.1978) (a case involving a COGSA action in which, like the case at hand, plaintiff failed to demonstrate that the defendant had any substantial contacts whatsoever with the forum state whereby personal jurisdiction over the defendant could properly be had).

The party asserting federal court jurisdiction has the burden of proving it. *Wallach v. Pagedale,* 376 F.2d 671 (8th Cir. 1967). In the instant case, no allegations tending to show the existence of personal jurisdiction over Dart and Carland are stated in the complaint. Nor does anything in the plaintiff's response to the defendants' motion to dismiss show that sufficient contacts with Arkansas exist so as to render Dart and/or Carland amenable to suit here.

In its counterclaim, MoPac does make the general assertion that its co-defendants "possess sufficient minimal contacts with the State of Arkansas so as to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment" (p. 1, MoPac's Answer to Cross-Claim and Counterclaim), but it fails, either in its counterclaim or in its response to Dart and Carland's motion to dismiss, to set forth in any more detail than the above-quoted language just what contacts with Arkansas the co-defendants have had.

Both the plaintiff and defendant MoPac argue that *in personam* jurisdiction exists over Dart and Carland for the sole reason that these defendants waived their objections to jurisdiction by including in their answer to the complaint a cross-claim against MoPac for indemnity. The nature of the cross-claim is wholly contingent, that is, Dart and Carland seek to recover from MoPac any sums which may eventually be recovered from them (Dart and Carland) by the plaintiff.

Lomanco and MoPac contend that when a party files a cross-claim (which, under F.R.C.P., Rule 13(g), is always permissive, *Augustin v. Mughel,* 521 F.2d 1215 (8th Cir.1975)), it thereby invokes the jurisdiction of the Court and thus cannot simultaneously maintain an argument that the Court does not have personal jurisdiction over it. The Court acknowledges that there is some authority for the contention that the filing of a cross-claim, a third-party complaint or a non-compulsory counterclaim constitutes a waiver of a party's objections to jurisdiction or venue.[2] It is the opinion of this Court, however, that the reasoning contained in the cases so holding is neither sound nor convincing, and that the better rule is that waiver of jurisdictional objections is not an automatic consequence of a party's filing a cross-claim, counterclaim or third-party complaint.

It is true that, unlike want of subject matter jurisdiction, lack of personal jurisdiction or venue may be waived by the consent or conduct of a party. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Further, prior to the adoption in 1938 of the Federal Rules of Civil Procedure, it was also clear that the filing of a counterclaim by a defendant estopped him from thereafter objecting to the court's authority over him on the basis of a jurisdictional or venue argument. See *Merchants Heat & Light Company v. J.B. Crow & Sons,* 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907), wherein the court held that "by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it." *Id.* at 289, 27 S.Ct. at 286. See, also, *American Mills Company v. American Surety Company of New York,* 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306 (1922). The question to be decided is whether the rule embodied in *Merchants Heat & Light Company v. J.B. Crow & Sons, supra,* has been altered by the Federal Rules of Civil Procedure.

F.R.C.P., Rule 12(b) states in relevant part,

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (2) lack of jurisdiction

**2.** See *Merz v. Hemmerle,* 90 F.R.D. 566 (E.D.N.Y.1981); *Globig v. Greene & Gust Co.,* 193 F.Supp. 544 (E.D.Wis.1961); *North Branch Products, Inc., v. Fisher,* 284 F.2d 611 (D.C.Cir. 1960); *Baltimore & O.R. Co. v. Thompson,* 80 F.Supp. 570 (E.D.Mo.1948), cited by the plaintiff and by defendant MoPac.

over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process * * * *No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.* * * *"* [Emphasis added.]

The Rules offer no concrete guidance as to how a defendant should present a counterclaim or cross-claim [3] with other defenses or the effect of a counterclaim or cross-claim, if asserted, upon other defenses. Rule 12(b) does not specifically authorize the coupling of a counterclaim or cross-claim with a jurisdictional defense without waiving the latter, and there is no specific language in the rule which shields the jurisdictional defenses from waiver when these defenses are joined with a counterclaim or cross-claim. But neither is there anything in the rule which mandates a finding of waiver of such defenses if a counterclaim or cross-claim is joined with them in a responsive pleading.

An exhaustive analysis of the issue at hand is contained in the Third Circuit Court of Appeals' opinion in *Neifeld v. Steinberg,* 438 F.2d 423 (3d Cir.1971), 17 A.L.R.Fed. 374, from which this Court takes the liberty of quoting at length:

"Although Rule 12(b) does not specifically shield these jurisdictional defenses, the Rule implicitly authorizes a defendant to join these defenses with a counterclaim without waiving these defenses. Rule 12(b) provides a defendant with the option of raising jurisdictional defenses by motion or by answer. If we were to take the position that a defendant, by raising his jurisdictional defenses in the same pleading in which he asserted a counterclaim, waived his jurisdictional defenses, we would in effect be engrafting a judicial exception to Rule 12(b). We would be requiring a defendant to raise his jurisdictional defenses by motion when he intends to file a counterclaim in his responsive pleading.[10] This requirement

would be contrary to the option provided to the defendant in Rule 12(b).[11]

"Furthermore, the policy behind Rule 12(b) militates against our finding a waiver where a defendant files a counterclaim in the same pleading in which he asserts jurisdictional defenses. The purpose behind Rule 12(b) is to avoid the delay occasioned by successive motions and pleadings and to reverse the prior practice of asserting jurisdictional defenses by 'special appearance.' 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1362, at 647–48 (1969). Judge Maris clearly articulated the changes which Rule 12(b) made in his seminal opinion in *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871 (3 Cir.), cert. denied 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944); 'Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in.' *Id.* at 874."

---

[10] If Steinberg had raised his jurisdictional defenses by motion prior to filing his answer, there would clearly have been no waiver. *Knapp-Monarch Co. v. Dominion Elec. Corp.,* 365 F.2d 175, 177 (7 Cir.1966); *North Branch Prods., Inc. v. Fisher,* 109 U.S.App.D.C. 182, 284 F.2d 611, 615 (1960), cert. denied 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961), noted in 63 W.Va.L.Rev. 287 (1961).

[11] It should also be noted that when the rule makers wanted to attach 'waiver' consequences in certain situations, they did so explicitly. Rule 12(h)(1) states that the defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process are waived if they are not included in a preliminary motion under Rule 12

---

**3.** For purposes of this discussion, the Court finds that cross-claims and non-compulsory

counterclaims are on a par insofar as the waiver issue is concerned.

as required by Rule 12(g), or, if no such motion is made, if they are not included in the responsive pleading or an amendment as of right to that pleading pursuant to Rule 15(a). In the case at bar, Steinberg asserted his jurisdictional defenses in his responsive pleading. If we found that the mere filing of a counterclaim in the same responsive pleading that raised jurisdictional defenses constituted a waiver of these jurisdictional defenses, we would be adding by judicial rule another situation when jurisdictional defenses are waived." 438 F.2d at 428, 429.

It is the finding of this Court that if, in the instant case, Dart and Carland were held to have waived their jurisdictional objections by virtue of their filing a cross-claim for indemnity against MoPac, such would amount to a requirement that these defendants make a "special appearance" wherein they would be required to raise their objections to jurisdiction before answering on the merits. This situation clearly was not intended to occur under the Rules.

Although the facts upon which the *Neifeld* opinion is based may be distinguished from those in the instant case in that the defendant in *Neifeld* withdrew his counterclaim prior to the plaintiff's filing a response thereto,[4] the Court finds that this is a distinction without a difference and that the reasoning in *Neifeld* nevertheless applies to the present case. As stated by the Court in the case of *In Re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398 (E.D.Pa.1981),

"Of course, the question presented here is different in that defendants have not voluntarily withdrawn the counterclaim and, furthermore, plaintiff has filed an answer to it. . . . But despite this distinction in the procedural posture of the present case, the reasoning in Neifield [sic] and the analysis contained therein of the policy underlying Rule 12(b), lead this Court to a similar result. In Neifield [sic], Judge Biggs envisioned a situation similar to the one now faced by this Court when he stated:

"But even in the situation where the plaintiff has already filed a responsive pleading to the counterclaim, defendant's counterclaim can be treated as conditional, its assertion being hypothecated upon an adverse ruling on the defendant's jurisdictional defenses. Such treatment would certainly be consonant with a defendant's expectations. Furthermore, because the jurisdictional defenses can be heard and determined before trial on the application of any party (Rule 12(d)), the objection that the plaintiff will be unable to determine how to prepare his case is avoided, and neither party is forced to prepare for a trial that may never materialize.

"*Id.* at 431 n. 17 (emphasis added) (citations omitted). This language, albeit dictum, comports with the liberal policy underlying the Federal Rules and leads the Court to conclude that defendants pleading a Counterclaim in their Answer did not constitute a waiver of the jurisdictional defenses."

92 F.R.D. at 413, 414.

For other decisions which have held that no waiver of jurisdictional or venue objections occurs by virtue of the filing of a cross-claim, counterclaim or third-party complaint, see *D'Amico v. Treat,* 379 F.Supp. 1004 (N.D.Ill.1974); *United States v. Marple Community Record, Inc.,* 335 F.Supp. 95 (E.D.Pa.1971); *Majerus v. Walk,* 275 F.Supp. 952 (D.Minn.1967); and cases contained in 17 A.L.R.Fed. 388.

█ In sum, it is the opinion of this Court that Dart and Carland's cross-claim for indemnity against MoPac did not constitute a waiver of their objections to *in personam* jurisdiction herein. To hold otherwise would "do violence to the purpose of Rule 12 in negativing the necessity of special appearances." *Hasse v. American Photograph Corporation,* 299 F.2d 666 (10th Cir. 1962).

In view of the foregoing, the Court finds that Dart and Carland's motion to dismiss

---

4. In the case at bar, an answer to the cross-claim was filed by MoPac and no attempt to withdraw the cross-claim has ever been made by Dart and Carland.

the plaintiff's complaint and co-defendant MoPac's counterclaim should be granted.